IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SALIM HAJIANI, <br><br> Plaintiff, <br><br> v. <br><br> GLISSTEN ENTERPRISES, INC. and GOLSHAN NOORANEE, <br><br> Defendants. | CIV. ACTION NO. |

## COMPLAINT

### INTRODUCTION

Plaintiff, by and through the undersigned counsel, brings this complaint for damages and other relief against Defendants and state and allege as follows:

### PARTIES

1. Plaintiff Salim Hajiani is a resident of the City of Decatur, DeKalb County, Georgia.

2. Defendant Glissten Enterprises, Inc. ("Glissten Enterprises") is a domestic Georgia corporation with its principal office address, as recorded with the Georgia Secretary of State, being 8279 Chicago Avenue, Douglasville, GA 30134.

3. Defendant Golshan Nooranee is the CEO, CFO, and Secretary of Defendant Glissten Enterprises according to its March 7, 2011, annual registration filing with the Georgia Secretary of State.

4. Defendant Golshan Nooranee[1] is the registered agent for Defendant Glissten Enterprises.

5. Defendant Glissten Enterprises may be served with the summons and the complaint in this civil action by service upon its registered agent, Defendant Golshan Nooranee at 5515 Grove Place Crossing, Lilburn, GA 30096.

## JURISDICTION AND VENUE

6. Plaintiff brings this action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") for failure to pay overtime compensation at the proper rate as required by the FLSA, and, therefore, this Court has original jurisdiction over this case based on 28 U.S.C. § 1331.

7. Under 28 U.S.C. § 1391, venue is proper in the United States District Court for the Northern District of Georgia because: (1) all of the Defendants reside within the state of Georgia, and at least one Defendant resides within the Northern District of Georgia and (2) a substantial part of the events or omissions giving rise

---

[1] In Defendant Glissten Enterprises' annual filing with the Georgia Secretary of State, Defendant Nooranee is listed as the registered agent, but her last name is spelled "Noorane."

to Plaintiff's claims, as described in this complaint, occurred within the Northern District of Georgia.

8. Defendants own and operate a Shell gasoline station and convenience store located at 8279 Chicago Avenue, Douglasville, GA 30134 ("Douglasville Shell Station").

9. Defendants employed Plaintiff at the Douglasville Shell Station from approximately November 2008 through August 2009 and then again from approximately November 2009 through December 2009.

10. The Douglasville Shell Station sold gasoline to vehicles travelling intrastate and interstate.

11. The Douglasville Shell Station sold beer and wine to individuals travelling interstate and intrastate.

12. When he was employed by Defendants, Plaintiff would sell beer and wine to individuals, and he frequently was provided with out-of-state drivers licenses when he requested identification for proof of the age of purchasers.

13. The Douglasville Shell Station also sold tickets for multi-state lotteries such as the Super Lotto and Mega Millions lotteries.

14. During Plaintiff's employment with Defendants, Defendant Glissten Enterprises was engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

15. During Plaintiff's employment with Defendants, Defendants were "employers" engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

16. On information and belief, Defendant Glissten Enterprises has had an annual gross volume of sales made or business done in excess of $500,000.00.

17. As a Cashier working for Defendants in their Douglasville Shell Station, Plaintiff was engaged in interstate commerce and/or in the production of goods for commerce.

18. Defendant Nooranee owns and operates Defendant Glissten Enterprises.

19. Defendant Nooranee directly and indirectly controls, determines, and directs the day-to-day operations of Defendant Glissten Enterprises.

20. Defendant Nooranee directly and indirectly sets Defendant Glissten Enterprises' payroll, compensation, scheduling, and other employment policies.

21. Defendant Nooranee had the power to hire and fire Plaintiff while he was employed at the Douglasville Shell Station.

22. Defendant Nooranee in fact hired Plaintiff as a cashier in 2008.

23. Defendant Nooranee directly supervised and controlled work schedules and other terms of employment of the Plaintiff when he was employed at the Douglasville Shell Station.

24. For example, Defendant Nooranee set the Plaintiff's weekly schedule when he was employed at the Douglasville Shell Station.

25. As another example, Defendant Nooranee determined the rate and method of payment for the Plaintiff when he was employed at the Douglasville Shell Station.

26. On information and belief, Defendant Nooranee maintains the employment records of the Plaintiff related to his employment at the Douglasville Shell Station.

27. Defendant Nooranee had the ultimate power to make binding policy decisions for the Douglasville Shell Station when Plaintiff was employed there.

28. Defendant Nooranee was an employer of the Plaintiff for the purposes of the FLSA when he worked at the Douglasville Shell Station.

29. Defendants failed to post the legally required notice of Plaintiff's rights under the FLSA, and, therefore, the statute of limitations applicable to Plaintiff's claim should be equitably tolled.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIMS

30. Plaintiff was employed as a Cashier when he worked at the Douglasville Shell Station.

31. Plaintiff's starting rate of pay was $9.50 per hour when he began working at the Douglasville Shell Station.

32. Plaintiff's rate of pay when his employment at the Douglasville Shell Station was terminated was $9.50 per hour.

33. Plaintiff was paid on a straight hourly rate basis for his recorded work hours.

34. Defendants paid Plaintiff in cash.

35. Plaintiff used a manual time sheet to record his hours worked.

36. Generally, Plaintiff was scheduled to either open the store at approximately 6:00 a.m. and then work until approximately 1:00 p.m., or he was scheduled to start work at approximately 1:00 p.m. and then close the Douglasville Shell Station at 12:00 a.m.

37. However, when Plaintiff was scheduled to open the Douglasville Shell Station, Plaintiff was frequently not relieved from his duties until after 1:00 p.m.

38. In fact, when Plaintiff was scheduled to open the Douglasville Shell Station, Plaintiff frequently was not relieved from his duties until several hours after 1:00 p.m.

39. For most of his employment, Plaintiff was the only employee present at the Douglasville Shell Station unless Defendant Nooranee or her husband were also present.

40. Plaintiff was scheduled to work 7 days per week every week.

41. Plaintiff frequently worked in excess of 40 hours per workweek.

42. However, Plaintiff was not paid the legally required overtime premium rate of 1.5 times his regular hourly rate for all hours worked in excess of 40 hours per workweek.

43. Instead, Plaintiff was paid his straight regular hourly rate for all recorded work hours in excess of 40 hours per workweek.

44. In addition, Defendants required that Plaintiff be on call and be available to return to work between the hours of 6:00 a.m. and 12:00 a.m. every day.

45. Defendants placed multiple requirements on Plaintiff while he was on call such that Plaintiff's free time was severely restricted.

46. For example, Defendant Nooranee instructed Plaintiff that he was required to remain awake, alert, and sober between 6:00 a.m. and 12:00 a.m. every day so that he could return to work.

47. As another example, Defendant Nooranee required that Plaintiff report back to the Douglasville Shell Station immediately after being called.

48. Every workweek, Plaintiff was called back to work while he was on call.

49. In general, Plaintiff was called back to work between one and four times per workweek.

50. Defendant Nooranee informed Plaintiff that she wanted him to be available at all times between 6:00 a.m. and 12:00 a.m., and, therefore, Plaintiff would be called back to work at least once per workweek so that he could not have another job or have any other regularly scheduled activities that would interfere with his ability to be available at all times between 6:00 a.m. and 12:00 a.m.

51. When Plaintiff was on call, Defendant Nooranee was generally the person who was working in the Douglasville Shell Station.

52. If Defendant Nooranee wanted to leave the Douglasville Shell Station to run errands or engage in personal activities, she would call Plaintiff and require that he return to work to take her place.

53. Thus, while he was on call, Plaintiff was engaged to wait for Defendant Nooranee's call for him to return to work, and, therefore, Plaintiff's on call time was compensable work time.

54. On one occasion, Plaintiff completed his morning shift and returned home, where he then fell asleep. When he awoke, he had received several calls from Defendant Nooranee. Defendant Nooranee instructed Plaintiff that he was not allowed to fall asleep while the Douglasville Shell Station was open between 6:00 a.m. and 12:00 a.m., that he was required to answer her calls while he was on call, and that he was required to immediately return to work.

55. On another occasion, Plaintiff was shopping when he received a call from Defendant Nooranee. Plaintiff was required to stop shopping and immediately return to work at the Douglasville Shell Station.

56. In general, there were no other employees with whom Plaintiff could trade on-call shifts/responsibilities. Instead, he was the only employee available to be on call and return to work when Defendant Nooranee needed to relieve herself from her work duties at the Douglasville Shell Station.

## WILLFUL FAILURE TO PAY ALL HOURS WORKED IN EXCESS OF 40 HOURS PER WORKWEEK AT THE REQUIRED OVERTIME RATE IN VIOLATION OF THE FLSA

57. Defendants had a policy and practice of regularly not paying Plaintiff for all hours worked in excess of 40 hours in a workweek at the premium overtime rate of 1.5 times his regular rate, as required by the FLSA.

58. For example, for all hours Plaintiff recorded working at the Defendants' Douglasville Shell Station premises, Defendants paid Plaintiff at his straight hourly rate of $9.50 per hour.

59. In addition, Defendants engaged Plaintiff to wait for Defendant Nooranee's call for him to return to work when he was on call, and, therefore, Plaintiff's on call time was compensable work time.

60. However, Defendants did not compensate Plaintiff for his on call time.

61. Defendants failed to maintain accurate records of Plaintiff's actual work hours.

62. Therefore, Defendants failed to comply with the record-keeping requirements of the FLSA.

63. Defendants' failure to pay Plaintiff 1.5 times his regular rate for all hours worked in excess of 40 hours in a workweek is in violation of the FLSA.

64. Defendants, pursuant to their policies and practices, willfully refused and failed to pay Plaintiff the premium overtime rate for all hours worked in excess of 40 hours per workweek.

65. Defendants lacked reasonable grounds for believing their pay practices comported with the requirements of the FLSA.

66. Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

67. Plaintiff seeks damages in the amount of his unpaid overtime wages, liquidated damages as provided under the FLSA, and such other legal and equitable relief as the Court deems proper.

68. Plaintiff also seeks the recovery of his attorney's fees and costs as provided by the FLSA.

69. Defendants were joint employers of Plaintiff when he worked at their Douglasville Shell Station, and, therefore, Defendants are jointly and severally liable to Plaintiff for his unpaid back wages, liquidated damages, and attorney's fees.

## PRAYER FOR RELIEF

Based on the allegations set forth in this complaint and the evidence as it is developed in this case, Plaintiff respectfully prays that:

- the Court enter judgment in favor of Plaintiff;

- the Court enter judgment against Defendants that their violations of the FLSA were willful;

- the Court enter judgment in favor of Plaintiff and award him his unpaid overtime wages and liquidated damages in an equal amount as provided for under the FLSA and such other legal and equitable relief as the Court deems proper;

- the Court enter judgment in favor of Plaintiff and award him all costs and attorney's fees incurred in prosecuting these claims;

- the Court grant Plaintiff all other further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  March 4, 2012

        Respectfully submitted,

        s/G. Blake Andrews
        Gary Blaylock "Blake" Andrews, Jr.
        Georgia Bar No. 019375
        Blake Andrews Law Firm, LLC
        2221 Peachtree Road NE, Suite X5
        Atlanta, GA 30309
        Telephone: 770-828-6225
        Facsimile: 866-828-6882
        blake@blakeandrewslaw.com